# Exhibit A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLIE THORNTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:05cv00656 DRB |
| ) | |
| FEDEX GROUND PACKAGE ) | |
| SYSTEM, INC., ) | |
| ) | TRIAL BY JURY DEMANDED |
| Defendant. ) | |

## AMENDED COMPLAINT

COMES NOW Plaintiff, by and through his attorney of record, and would show unto the Court as follows:

### STATEMENT OF PARTIES

1. Plaintiff Charlie Thornton (hereinafter, "Plaintiff" or "Thornton") is over the age of 19 years, and is and at all times material hereto was a citizen of the United States and the State of Alabama, residing in Elmore County, Alabama.

2. Defendant FedEx Ground Package System, Inc. ("FedEx") is a foreign corporation registered with the State of Alabama Secretary of State's office doing business in Alabama.

### FACTS

3. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

4. On or about January 2005, Plaintiff observed an advertisement in the Montgomery Advertiser newspaper for independent drivers needed. These drivers were invited to join FedEx Ground Package Systems, Inc. The advertisement indicated that potential drivers

were to meet qualifications including the ability to purchase a delivery vehicle.

5. The readers of the advertisement and interested parties were invited to attend an informational session at the Holiday Inn, 1185 Eastern Boulevard, Montgomery, on Tuesday, January 4, 2005, at 6:00 P.M.

6. Plaintiff attended the informational session that was presented by Mr. Stan Trott of FedEx. Mr. Trott informed interested persons that FedEx Ground Package System, Inc., a division of the package delivery business Federal Express, had open routes available in the Montgomery area for qualified independent contractors. Plaintiff was further informed that persons interested in obtaining the open routes would have to qualify then take a training course offered by FedEx. It was understood that upon completion of the training course qualified applicants would be granted routes in and around the Montgomery area. Plaintiff was told by several employees of the defendant that at least three routes would be available in the Montgomery surrounding area.

7. Plaintiff made application to become an independent contractor as instructed. Plaintiff met all of the qualifications enumerated by FedEx. Plaintiff passed a driver's physical examination and drug screening test. Thereafter, FedEx invited Plaintiff to attend a two week training program in Birmingham, Alabama. The training program began on January 24, 2005.

8. During his training in Birmingham, Plaintiff was informed on several occasions that upon completion of the training program and upon procurement of a custom-made delivery truck, Plaintiff would be given a specific route in Elmore County. In reliance upon these and other representations made to him, Plaintiff took numerous life altering steps to accommodate the

requirements to become an independent contractor with FedEx.

9. After his Birmingham training session, Plaintiff was approved to continue his training in Montgomery, Alabama. Plaintiff began training at the Montgomery facility on or about February 8, 2005. From February 8th through February 24th, Plaintiff worked and trained at the Montgomery FedEx/Federal Express facility.

10. During his training at the Montgomery FedEx/Federal Express facility, Plaintiff was given official FedEx uniforms. Plaintiff was also given sundry materials related to his position as an independent driver. Such materials included delivery paperwork, door tags, instruction book, Contractor's Business Guide, truck maintenance guides and instructions, and other items.

11. At the instruction and direction of FedEx, Plaintiff made application for the lease/purchase of the delivery truck he would use on his route. Subsequently, Plaintiff was approved for the lease/purchase of the delivery truck. During this time, Plaintiff was repeatedly told by managers with FedEx that he was approved and that a route was available. On April 19, 2005, Plaintiff met with Kent Gastineau, local terminal manager for FedEx Montgomery, to sign the contract for Elmore County. Gastineau stated that there was a paperwork problem but that the route belonged to Plaintiff. Gastineau gave an official FedEx route book to Plaintiff. Plaintiff was encouraged to continue working toward preparing for the time when he would work the Elmore County route.

12. On or about May 3, 2005, the specially marked and manufactured delivery truck arrived. Plaintiff, as an independent owner and operator, was solely responsible for the financing and/or purchase of the delivery truck. The delivery truck costs some $37,000.00.

13. Plaintiff was informed that he would start his Elmore County route on May 10, 2005.

14. Plaintiff, in preparation for his new route, even purchased a special map of the area.

15. At about that time, Plaintiff was informed by Kent Gastineau that there was a further problem with Plaintiff's paperwork such that it might be a few weeks before the Elmore County route became available.

16. Plaintiff was assured on numerous occasions by managers of FedEx that the route was available and that as soon as the paperwork problem was cleared up that Plaintiff would be given the Elmore County route.

17. On May 14, 2005, Plaintiff was informed by Gastineau that the route was never approved to be assigned to Plaintiff. Plaintiff was informed that no local routes existed.

18. Defendant never offered an explanation to Plaintiff as to why there was never a local route available.

19. Defendant has not offered to pay for the delivery truck, to help Plaintiff with the obligations he incurred as a result of his reliance upon Defendant's representations and has not offered to compensate Plaintiff for his lost time and efforts.

## COUNT I (SPECIFIC PERFORMANCE)

20. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

21. On or about the 4th day of January, 2005, the parties entered into an agreement for the performance of certain acts and things hereinabove described.

22. Plaintiff is now, and has been at all times relevant to this cause, ready, willing, and able to carry out and perform the terms, provisions, and obligations of said agreement.

23. Plaintiff has offered to perform his obligations under said agreement.

24. Plaintiff has demanded that Defendant perform its obligations under said agreement, but Defendant has failed and/or refused to do so.

25. Damages would be an inadequate remedy and Plaintiff is entitled to the specific performance of said contract by the Defendant.

26. Plaintiff offers to do equity in the premises.

WHEREFORE, the Plaintiff prays the Court for the following relief:

(a) a decree directing the specific performance of the said contract by the Defendant; and

(b) a decree directing the Defendant to execute a contract to Plaintiff pursuant to the terms and provisions of said agreement; and

( c) an award to the Plaintiff of Plaintiff's attorney's fees and costs to be paid by Defendant; and

(d) an award to the Plaintiff of such other, further or different relief as may be just and proper.

## COUNT II (BREACH OF CONTRACT)

27. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

28. Plaintiff entered into a contract with FedEx. Plaintiff took all actions demanded upon him and performed each act required to qualify as a contract driver for FedEx. Plaintiff detrimentally relied upon the statements and promises of the defendant.

29. Defendant informed Plaintiff on numerous occasions that when and if he performed each act demanded upon him to qualify as a contract driver he would be given a route to

service.

30. Defendant has refused to give Plaintiff a route as promised and refuses to negotiate with Plaintiff further.

31. Defendant had an obligation to full fill its promise by providing Plaintiff with the delivery route.

32. The conduct of Defendant constitutes a material breach of the agreement.

33. As a result of the conduct of Defendant, Plaintiff has sustained general and special damages as will be established at the time of the trial.

## COUNT III (NEGLIGENCE)

34. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

35. Plaintiff alleges that Defendant owed him a duty of care when it induced Plaintiff into committing to take the steps to qualify for an independent contractor route. Plaintiff detrimentally relied upon the statements and promises of the defendant.

36. As a proximate result of Defendant's negligence, Plaintiff was caused damage, in that he lost employment, income, expenses, time, effort and suffered great embarrassment, humiliation, stress, emotional distress and mental anguish; also he was forced to hire an attorney.

37. The plaintiff claims punitive damages due to the defendants' negligence.

38. As a result of the conduct of Defendant, Plaintiff has sustained general and special damages as will be established at the time of the trial.

## COUNT IV (GROSS NEGLIGENCE, WANTONNESS AND WILLFULNESS)

39. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

40. Plaintiff alleges that Defendant owed him a duty to properly inform him as to the availability of routes available for contract. Defendant knew that Plaintiff was relying on the representations of Defendant that certain routes would be available for qualified contractors.

41. Through its actions, Defendant has demonstrated a total disregard for Plaintiff's rights and showed willful misconduct, wantonness, or entire want of care. These intentional acts raise the presumption of conscious indifference to consequences and Defendant is subject to the imposition of punitive damages.

42. As a proximate result of Defendant's gross negligence and/or willful misconduct, wantonness and/or entire want of care regarding the complete administration of the agreement, the failure to disclose, and breach of contract, Plaintiff was forced to incur extraordinary expenses, financial loss and suffered mental anguish.

43. The plaintiff claims punitive damages due to the defendants' gross negligence and/or wantonness and willfulness.

44. As a result of the conduct of Defendant, Plaintiff has sustained general and special damages as will be established at the time of the trial.

Submitted this the _19th_- day of July, 2005.

                                                      s/K. ANDERSON NELMS
                                                      K. ANDERSON NELMS
                                                      P.O. Box 5059

Montgomery, AL 36103  
Phone: (334) 263-7733  
Fax: (334) 832-4390  
andynelms@jaylewislaw.com  
ASB-6972-E63K  
Counsel for Plaintiff

## TRIAL BY JURY DEMANDED

OF COUNSEL:

THE LAW OFFICES OF JAY LEWIS, L.L.C.  
847 S. Lawrence Street  
Montgomery, AL 36104  
(334) 263-7733  
(334) 832-4390

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing on the following parties and/or counsel by placing a copy of the same in the United States mail, postage prepaid and properly addressed, or by hand delivery on this _19th_ day of July, 2005.

Robert Keeling Spotswood  
Kenneth Daniel Sansom  
John Robert Parker, Jr.  
Spotswood, LLC  
2100 Third Avenue, North  
Concord Center, Suite 940  
Birmingham, AL 35203

s/K. ANDERSON NELMS  
K. ANDERSON NELMS  
P.O. Box 5059  
Montgomery, AL 36103  
Phone: (334) 263-7733  
Fax: (334) 832-4390  
andynelms@jaylewislaw.com  
ASB-6972-E63K  
Counsel for Plaintiff