UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____
                                              )
CHARLIE THORNTON,                             )
                                              )
                                              )
              Plaintiff,                       )
                                              )
       v.                                     )          Civil Action No.
                                              )          2:05-cv-00656-MEF
                                              )
FEDEX GROUND PACKAGE SYSTEM, INC.,            )
                                              )
                                              )
              Defendant.                       )
_____)


## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT FEDEX GROUND PACKAGE SYSTEM, INC.

Defendant FedEx Ground Package System, Inc. (hereinafter "FedEx Ground") respectfully submits this memorandum of law in support of its Motion for Summary Judgment and requests that the Court grant summary judgment in its favor with respect to all claims asserted in Plaintiff's Amended Complaint (hereinafter "Complaint"). In his Complaint, Plaintiff Charlie Thornton claims that FedEx Ground wrongfully failed to provide him with a contract as a FedEx Home Delivery independent contractor in or around the Montgomery, Alabama area. The Complaint asserts four causes of action: specific performance (Count One), breach of contract (Count Two), negligence (Count Three), and "gross negligence, wantonness and willfulness" (Count Four). Based on the undisputed evidence presented in FedEx Ground's Evidentiary Materials in Support of Summary Judgment, it is clear that FedEx Ground is entitled to judgment as a matter of law as to each of these claims.

## PROCEDURAL HISTORY

Plaintiff Charlie Thornton commenced this lawsuit in the Circuit Court of Montgomery County, Alabama on May 25, 2005, when he filed his original complaint.  (Docket # 1, Exhibit A at 8.)  On July 14, 2005, FedEx Ground removed the case to this Court pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332 (Docket # 4 at 6) and answered the original complaint (Docket # 7 at 17).[1]  On July 20, 2005, Plaintiff filed an Amended Complaint to correct his prior misidentification of FedEx Ground.  (Docket # 3.)  FedEx Ground answered Plaintiff's Amended Complaint on July 29, 2005.  (Docket # 11.)  On January 25, 2006, after obtaining leave from the Court (Docket #24), FedEx Ground amended its Answer.  (Docket # 25.)

The Court entered its Uniform Scheduling Order on August 19, 2005, setting April 18, 2006 as the deadline for dispositive motions.  (Docket # 15.)  Thereafter, the parties engaged in discovery, and FedEx Ground now moves for summary judgment on all counts of Plaintiff's Complaint based on Plaintiff's answers to FedEx Ground's interrogatories, the depositions that have been taken, the exhibits to those depositions, and the affidavit submitted as FedEx Ground's Evidentiary Materials in Support of Motion for Summary Judgment.

## UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT[2]

FedEx Ground utilizes independent contractors in its residential delivery business, known as FedEx Home Delivery.  (*See* Exhibit 1—Affidavit of Timothy Edmonds (hereinafter "Edmonds Aff.") ¶¶ 9–10.)  These independent contractors are self-employed and must obtain

---

[1] It is undisputed that Alabama law applies to Plaintiff's claims.

[2] FedEx Ground presents the following facts as undisputed only to the extent that they assist the Court in considering FedEx Ground's Motion for Summary Judgment.  FedEx Ground reserves its right to dispute the substance and admissibility of some or all of the following facts should the Motion be denied.

and maintain their own delivery vehicles. (*See* Ex. 1—Edmonds Aff. ¶¶ 10–11.) FedEx Ground entrusts its independent contractors, and their employees (if any), to deliver packages to its customers.

In order to satisfy applicable contractual and regulatory requirements, prospective independent contractors must complete an application and screening process. (*See* Ex. 1— Edmonds Aff. ¶ 14.)   Additionally, prospective independent contractors must invest in an appropriate delivery vehicle. (*See* Ex. 1—Edmonds Aff. ¶¶ 11, 13.)   After completing the application process, the prospective independent contractor and FedEx Ground execute a comprehensive contract, called an "Operating Agreement," which defines the relationship of the parties. (Ex. 1—Edmonds Aff. ¶¶ 14, 17; *see* Exhibit 2—Deposition of Charlie Thornton (hereinafter "Thornton Dep.") at 132:20–23; 133:1–21; Exhibit 3—P&D Contractor Business Guide (hereinafter "Business Guide").)   The contractual relationship between the independent contractor and FedEx Ground does not begin unless and until the Operating Agreement is signed; FedEx Ground does not, under any circumstances, enter into the independent-contractor relationship with a contractor who has not executed an Operating Agreement. (Ex. 1—Edmonds Aff. ¶ 18.)   After the applicant and an authorized company representative sign the Operating Agreement, the applicant becomes an independent contractor for FedEx Ground and can begin servicing a defined geographic service area, called a "Work Area." (Ex. 1—Edmonds Aff. ¶¶ 16, 19; Ex. 3—Business Guide at 29.)   At that point, the independent contractor receives a limited proprietary interest in the Work Area for the term of the contract. (Ex. 1—Edmonds Aff. ¶ 19; *see also* Ex. 3—Business Guide at 21.)   Under the Operating Agreement, independent contractors may buy and sell entire or partial Work Areas. (Ex. 1—Edmonds Aff. ¶ 19; Ex. 3— Business Guide at 28–29.)   The geographic scope (and even the existence) of a particular Work

Area depends on the respective decisions of independent contractors to buy or sell Work Areas, in whole or in part, and the decisions of customers to utilize FedEx Ground's services. (Ex. 1—Edmonds Aff. ¶ 20.)

In early 2005, Plaintiff Charlie Thornton applied to become an independent contractor with FedEx Ground.  On January 4, 2005, Plaintiff and his wife, Deborah, attended an informational session about becoming a contractor for FedEx Home Delivery.  (Am. Compl. ¶ 5; Ex. 2—Thornton Dep. at 126:5–15; 130:16–23; 131:1–13.)  Stan Trott moderated the session. At the time, Trott was the senior manager for both FedEx Ground, which provides business-to-business delivery services, and FedEx Home Delivery[3] at the terminal facility in Montgomery, Alabama.[4]  (Ex. 2—Thornton Dep. at 129:9–12.)  Plaintiff claims that Trott told him and his wife that there were two, and possibly three, routes available in the Montgomery area, including one in Elmore County, where Plaintiff lives.  (Ex. 2—Thornton Dep. at 9:19–23; 10:1–2; 128:16–23; 129:1–4; 140:16–23; 141:1–12; 180:2–23; 181:1–23; 182:1–3; 185:13–14; 216:10–14.)

After the informational session, Plaintiff informed Trott that he was interested in becoming an independent contractor for FedEx Home Delivery and was particularly interested in the Elmore County route.  (Ex. 2—Thornton Dep. at 180:17–23; 199:17–23, 200:1–9; 201:2–16.) Trott helped Plaintiff begin the initial screening and application processes.  (Ex. 2—Thornton Dep. at 200:8–9.)  On January 13, 2005, after a credit check, Plaintiff was approved by Stearns Bank to obtain financing for a delivery van.  (*See* Exhibit 6—Fax from Chad Primus indicating

---

[3]  Both FedEx Ground and FedEx Home Delivery are operating divisions of FedEx Ground Package System, Inc., which itself is a wholly-owned subsidiary of the FedEx Corporation, a publicly traded company. (Ex. 1—Edmonds Aff. ¶ 9.) The Montgomery terminal is a "co-location," which means that both FedEx Ground and FedEx Home Delivery have operations there. (Exhibit 4—Deposition of Kent Gastineau (hereinafter "Gastineau Dep.") at 11:20–23.)

[4]  Trott officially retired in April 2005. (Exhibit 5—Deposition of Stan Trott (hereinafter "Trott Dep.") at 69:18–23; 70:1–17.)

credit approval of Plaintiff.)  Plaintiff also passed a driving examination, motor-vehicle-incident background check, drug test, and physical examination.  (*See* Exhibit 7—Record and Certification of Plaintiff's Road Test; Ex. 5—Trott Dep. at 75:23; 76:1–23; 77:1-8; 78:11–23; 79:1–9; Exhibit 8—Driver's Annual Certification of Motor Vehicle Violations; Am. Compl. ¶ 7.) Subsequently, Plaintiff attended and completed a two-week educational program, which began on January 24, 2005.  (Am. Compl. ¶ 7.)  The program, which was held in Birmingham, Alabama, included classroom and driving instruction.  (Ex. 2—Thornton Dep. at 143:7–16.) Plaintiff's driving instruction then continued in Montgomery, where he rode and drove with other drivers.[5]  (Ex. 2—Thornton Dep. at 206:7–15, 21–23; 207:1–23; 208:1–23; 209:10–17.)

In mid-February, Kent Gastineau became Operations Manager for FedEx Home Delivery in Montgomery.  (Ex. 4—Gastineau Dep. at 7:15–21; 11:13–23; 12:1–15.)  Gastineau had previously worked as a Service Manager at FedEx Ground's Chattanooga, Tennessee terminal. (Ex. 4—Gastineau Dep. at 9:3–8.)  Gastineau assumed Trott's duties for Home Delivery, including processing Plaintiff's application to become an independent contractor.  (Ex. 4— Gastineau Dep. at 64:12–21.)  During the spring of 2005, Gastineau simultaneously sought to get approval of two new routes, and independent contractors to service those routes, in the Montgomery area:  Plaintiff for an Elmore County route and Isaac Scott, another potential contractor, for a Troy, Alabama route.  (Ex. 4—Gastineau Dep. at 38:18–23; 39:1–13; 40:13–20; 45:20–23; 46:1; 85:22–23; 86:1–4.)  The Troy route was an established route that had been abandoned by the independent contractor who had serviced it previously.  (Ex. 4—Gastineau Dep. at 32:1–4; 33:11–21; 70:10–21.)  The Elmore County route would be a new route, created in addition to the already-existing Elmore County route due to the increasing number of

---

[5] Thornton was paid for his training time.  (Ex. 2—Thornton Dep. at 144:2–4; 206:16–18.)

packages being shipped to Elmore County residents.[6]  (Ex. 4—Gastineau Dep. at 32:1–8; 35:2–14; 69:15–22.)

As the spring progressed, however, Gastineau experienced difficulty getting approval to award the two routes to the two prospective contractors, due to various paperwork processing problems.  (Ex. 4—Gastineau Dep. at 35:16–23; 36:1–5.)  To begin with, the contract for the abandoned Troy route had not been terminated properly, which Gastineau believed "was putting a hold on the whole system, and that was preventing me from moving forward in any direction . . . ."  (Ex. 4—Gastineau Dep. at 70:10–18; *accord* Gastineau Dep. at 32:8–13, 22–23; 33:1–10, 19–21.)  Gastineau also had trouble gathering Plaintiff's written application together so that he could submit it for approval.  (*See* Ex. 4—Gastineau Dep. at 21:17–23; 22:1–14.)  On March 26, 2005, Plaintiff visited Gastineau at the Montgomery FedEx Ground terminal to inquire about the status of his application.  Gastineau told Plaintiff that he had just received his file with the necessary signatures from Omar Newman, a FedEx Ground instruction supervisor in Birmingham, the day before.[7]  (*See* Exhibit 9—E-mail from Thornton to Omar Newman**;** Ex. 2—Thornton Dep. at 287:13–17, 288:16–23; 289:1–5.)

In April, Gastineau obtained two vehicle numbers, one for Plaintiff and one for Scott.  (Ex. 4—Gastineau Dep. at 36:15–22.)  Because both Plaintiff and Scott had been assigned

---

[6] Derek Pettiway, the Home Delivery independent contractor who owned the existing Elmore County route had been unable to provide adequate service in the area during the peak holiday season in 2005.  (Ex. 8—Gastineau Dep. at 65:9–23; 66:13–20.)  Because of that, Gastineau expected the route to be split into two separate routes.  (Ex. 8—Gastineau Dep. at 66:21–23; 67:1–9.)  The possibility also existed that FedEx Ground would exercise its right to terminate its Operating Agreement with Pettiway, based on his failure to adhere to service standards set forth in the contract.  (Ex. 8—Gastineau Dep. at 67:10–20.)  In either case, Gastineau thought an Elmore County route would become available.

[7] While Thornton was at the terminal on March 26, he picked up a copy of FedEx Ground's "P/D Contractor Business Guide," which included an unsigned copy of the Operating Agreement.  (Ex. 9—E-mail from Thornton to Omar Newman; Ex. 3—Business Guide; Ex. 2—Thornton Dep. at 287:23; 288:1–15.)

vehicle numbers, Gastineau assumed that both the Troy and Elmore County routes had been approved. (Ex. 4—Gastineau Dep. at 11:14.) Near the end of April, Scott's van arrived and he signed the contract for the Troy route. (Ex. 4—Gastineau Dep. at 42:3–7.) Gastineau called Plaintiff to the Montgomery terminal "to sign the contract for Elmore County" on April 19, 2005.[8] (Am. Compl. ¶ 11; *see also* Exhibit 10—Excerpts from transcript of recorded phone calls (hereinafter "Phone Call Tr.") at 58:18–21; 59:1–8; Ex. 2—Thornton Dep. at 97:11–23; 98:1–23; 99:1–23; 100:1–4; 220:9–10.) When Plaintiff arrived, however, Gastineau explained that he could not produce the contract for Plaintiff to sign due to a "paperwork problem." (Ex. 2— Thornton Dep. at 220:13–14; Am. Compl. ¶ 11.)

On April 22, 2005, Plaintiff purchased a FedEx Home Delivery van. (Ex. 2—Thornton Dep. at 232:8–23.) The van arrived at the Montgomery terminal on May 3, and Plaintiff picked it up that day. (Exhibit 11—E-mail from Lori Beymer to Kent Gastineau regarding delivery of Plaintiff's van; Ex. 4—Gastineau Dep. at 81:8–19; 82:1–21; Ex. 2—Thornton Dep. at 225:19– 23; 226:1–4; Am. Compl. ¶ 12.) After obtaining the van, the only remaining step for Plaintiff to become an independent contractor for FedEx Home Delivery was to sign an Operating Agreement that defined a contractual Work Area. While Plaintiff was at the terminal picking up his van on May 3, Gastineau attempted to pull up the contract document on a computer, so that Plaintiff could sign it. (Ex. 2—Thornton Dep. at 301:21–23; 302:1–13; Ex. 4—Gastineau Dep. at 42:8–12) Gastineau was unable, however, to access the proper document through his computer terminal, which he attributed to a computer problem. (Ex. 2—Thornton Dep. at 302:14–23; Ex. 4—Gastineau Dep. at 42:8–15; 43:2–9.) Gastineau told Plaintiff, "as soon as it comes up, I'll give you a call and you can come back in and sign off." (Ex. 2—Thornton Dep. at

---

[8] An independent contractor's contract with FedEx Ground can have a term of either one or two years. Plaintiff had previously informed Gastineau that he wanted a two-year contract. (Ex. 2—Thornton Dep. at 132:8–17; *see also* Thornton Dep. at 299:19–23; 300:1–11.)

303:13–18; 113:21–23; 114:1–18; Exhibit 12—Excerpts from transcript of Thornton's "History"

recording (hereinafter "History Tr.") at 30:21–23.)

Over the next few days, however, Gastineau was unable to access the contract documents

through the computer system.  (Ex. 4—Gastineau Dep. at 43:9–18.)    When Plaintiff called to

inquire about the status of the contract, Gastineau truthfully informed him that it was "still not

up."  (Ex. 2—Thornton Dep. at 303:21–23.)  Shortly thereafter, Gastineau discovered that he

could not access the necessary document for Plaintiff to sign because the new Elmore County

route had not been approved.  (Ex. 4—Gastineau Dep. at 46:10–23.)  Gastineau also discovered

that in seeking to get both Plaintiff and Scott approved for routes at the same time, he had

inadvertently used the identification number for the Troy route ("Work ID Number") on both of

their applications.  (Ex. 4—Gastineau Dep. at 71:6–23; 72:1–3).  Gastineau testified that he

believes that once Scott signed the contract for the Troy route, the system identified that Work

ID Number as being unavailable and prevented the issuance of a final contract for Plaintiff.  (Ex.

4—Gastineau Dep. at 72:4–12.)

Upon realizing that the Elmore County route had not been approved, Gastineau called

Jeff White, FedEx Ground's Regional Operations Engineer in Atlanta, and informed him of

Plaintiff's situation.  (Ex. 4—Gastineau Dep. at 46:20–23; 47:1–5.)  White told Gastineau that

"he was going to do everything in his power to go ahead and get it approved for a second route

since the van was already there."  (Ex. 4—Gastineau Dep. at 47:5–9.)  Unfortunately, however,

White was unable to get the additional Elmore County route approved for Plaintiff.  White told

Gastineau that he and his supervisors had tried to get the route approved, but it could not be done

because there were simply not enough packages to justify the creation of an additional

Montgomery-area route at that time.[9]  (Ex. 4—Gastineau Dep. at 48:14–23; 1–4.)  By then, the other Montgomery-area Work Areas that had been available in January 2005 had been granted to other contractors.  Thus, at that point, there was no Montgomery-area route available for Plaintiff or anyone else.  (Ex. 4—Gastineau Dep. at 74:1–5; Ex. 12—History Tr. at 44:8–11.)

On Monday, May 16, 2005, Gastineau informed Plaintiff that there was no Montgomery-area route available for him.  (Ex. 2—Thornton Dep. at 319:11–21; Ex. 12—History Tr. at 39:15–19.)  Gastineau recognized that Plaintiff had purchased a delivery van and, accordingly, attempted to resolve the situation.  First, Gastineau offered to make the first monthly payment on Plaintiff's van from his own funds, as Plaintiff confirmed in a letter dated May 19, 2005.  (Ex. 2—Thornton Dep. at 246:9–23; 247:13–18; 248:20–21; Ex. 4—Gastineau Dep. at 51:14–23; 52:1–7.)  Second, in a telephone conversation secretly recorded by Plaintiff, Gastineau informed Plaintiff that there was a Home Delivery Work Area available in Anniston, Alabama, which Plaintiff could take.[10]  (Ex. 10—Phone Call Tr. at 4:13–20; Ex. 2—Thornton Dep. at 151:20–23; 152:9–14.)  Plaintiff believed the Anniston Work Area "just wasn't feasible" for him due to its distance from his home, and he did not take the route.  (Ex. 2—Thornton Dep. at 152:10–14; 153:5–7; 154:3–6.)

Ultimately, Plaintiff spoke to Richard Jean, a Senior Manager for FedEx Ground in Pittsburgh, Pennsylvania.  Jean told Plaintiff that he was concerned about Plaintiff's situation and would make telephone calls on his behalf.  (*See* Ex. 10—Phone Call Tr. at 81:17–23; 82:1.)

_____

[9]  Because FedEx Ground's independent contractors have a proprietary interest in their Work Areas, FedEx Ground cannot add or reconfigure routes in an area unless package volume or customer service requirements reasonably justify it.  (*See* Ex. 3—Business Guide at 20, Addendum 5; Ex. 1—Edmonds Aff. ¶ 20.)

[10]  On or around May 17, 2005, Thornton began secretly tape-recording his telephonic communications with employees at FedEx Ground and Stearns bank.  (Ex. 2—Thornton Dep. at 100:11–23; 101:1; 328:11–19.)

After the intercession of Jean and Chad Primus, the Account Manager at Stearns Bank who had arranged Plaintiff's financing (*see* Exhibit 13—Letter from Chad Primus to Plaintiff; Exhibit 14—Pl.'s Initial Disclosures ¶ 4)**,** Plaintiff was able to sell the van to another Home Delivery driver on May 25, 2005, the same day Plaintiff's first monthly payment on the van was supposed to have been due.  (Ex. 2—Thornton Dep. at 242:17–23; 243:1–5; 411:21–23; 412:1–13; Exhibit 15—Bill of sale of delivery van from Plaintiff to Daniel Goode.)  Thus, Plaintiff never had to make his first monthly payment on the van, or any subsequent payments.  (Ex. 2—Thornton Dep. at 249:22–23; 250:1–2.)  The Home Delivery driver who bought the van also paid Plaintiff directly for a radio Plaintiff had installed in it.  (Ex. 2—Thornton Dep. at 231:4–13.)

That same day, May 25, 2005, Plaintiff filed this lawsuit against FedEx Ground in the Circuit Court of Montgomery County, Alabama.  (Compl. at 8.)  Plaintiff's Amended Complaint asserts four claims arising out of FedEx Ground's failure to give him a Montgomery-area route.  First, it seeks specific performance of the alleged agreement Plaintiff had with FedEx Ground.  (Am. Compl. ¶¶ 20–26.)  Second, the Complaint asserts that FedEx Ground committed a breach of contract by failing to award him a route.  (Am. Compl. ¶¶ 27–33.)  Third, the Complaint asserts that FedEx Ground was negligent.  (Am. Compl. ¶¶ 34–38.)  Finally, the Complaint asserts that FedEx Ground acted with "gross negligence, wantonness, and willfulness."  (Am. Compl. ¶¶ 39–44.)   For these claims, Plaintiff seeks specific performance and damages, including mental-anguish and punitive damages.  (Am. Compl. ¶¶ 26, 33, 37–38, 43–44.)

## ARGUMENT

The Court must enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); *see Tolbert v. Follett Higher Educ. Group, Inc.*, __ F. Supp. 2d __, 2006 U.S. Dist. LEXIS 11770, at *2–4 (March 7, 2006) (Fuller, J.) (a movant can meet its burden of showing the absence of a genuine issue of material fact by "presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof"). Here, undisputed evidence establishes that Plaintiff's claims fail as a matter of law and fact. Consequently, this Court should grant summary judgment in FedEx Ground's favor on each count of Plaintiff's Complaint.

I.   **Plaintiff cannot recover for breach of contract because undisputed evidence establishes that he and FedEx Ground did not enter into a binding contract.**

"One of the elements of a breach-of-contract claim under Alabama law is the existence of a valid contract binding the parties." *Avis Rent a Car Sys. v. Heilman*, 876 So. 2d 1111, 1118 (Ala. 2003) (internal marks omitted) (citing *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). Plaintiff's breach-of-contract claim (Am. Compl. ¶¶ 27–33) fails as a matter of law because the so-called agreement Plaintiff has described in his deposition testimony is void under the Statute of Frauds and because FedEx Ground never entered into a binding agreement with Plaintiff.

A.   **The alleged agreement between Plaintiff and FedEx Ground violates the Statute of Frauds.**

Alabama's Statute of Frauds voids, as a matter of law, any unwritten agreement "which, by its terms, is not to be performed within one year from the making thereof." Ala. Code § 8-9-2(1). A two-year contract is void pursuant to § 8-9-2(1) unless it is written and signed. *See, e.g.*, *Ex parte Ramsay*, 829 So. 2d 146, 155 (Ala. 2002) (affirming grant of summary judgment on the ground that the alleged agreement violated Ala. Code § 8-9-2(1) because "[t]he oral contract . . .

required 'two or three years of performance' by [the plaintiff] and allowed 'two or three years' for the performance by the [defendant]"); *Selby v. Quartrol Corp.*, 514 So. 2d 1294, 1296 (Ala. 1987) ("[A]n oral three-year employment contract would violate [§ 8-9-2(1)].").

In this case, Plaintiff admits that the alleged contract under which he seeks relief consisted of an oral agreement with FedEx Ground to be performed over a two-year period. At his deposition, Plaintiff testified: "I was under the assumption that I had signed off to be a contractor because the phone call that I received from Kent asking me about the one- or two-year contract, I asked him to explain it to me, and he just said it's either a one- or two-year. They review your performance, and — and, you know, it's based on that. I said definitely I want two years." (Ex. 2—Thornton Dep. at 132:8–17; *see also* Thornton Dep. at 299:19–23; 300:1–11.) Thornton's deposition testimony is fatal to his breach-of-contract claim because it establishes that the duration of the alleged oral agreement with FedEx Ground—by his own account—was for two years.

Moreover, it is undisputed that Plaintiff never signed a written contract to be an independent contractor with FedEx Ground. (Ex. 4—Gastineau Dep. at 74:17–21.) Plaintiff has not asserted that his alleged agreement with FedEx Ground was written nor has he produced a written agreement. (Ex. 2—Thornton Dep. at 135:15–23; 136:1–5.) In fact, Plaintiff admits that he could not sign the contract in April because FedEx Ground's computer system would not let Gastineau access the appropriate contract documents. (Ex. 10—Phone Call Tr. at 58:18–21; 59:1–8.) Plaintiff also admits that the computer again would not permit Gastineau to access the necessary documents for Plaintiff to sign on May 3, 2005, the day he picked up his van. (Ex. 2—Thornton Dep. at 301:14–23; 302:1–13.) After May 3, when Plaintiff periodically called Gastineau to see if he could sign the contract, Gastineau would truthfully respond that the

contract was "still not up." (Ex. 2—Thornton Dep. at 303:21–23.)  Ultimately, the contract

never "came up," and Plaintiff never signed it. (Ex. 4—Gastineau Dep. at 74:17–21.)  Therefore,

because the contract alleged by Plaintiff was not written and could not be performed within one

year, § 8-9-2(1) renders the alleged agreement void as a matter of law, and FedEx Ground is

entitled to summary judgment on Plaintiff's breach-of-contract claim.

**B.     The undisputed evidence not only establishes that the so-called agreement is
        rendered void by the Statute of Frauds, but also establishes that Plaintiff and FedEx
        Ground never entered into a binding contract.**

Plaintiff has failed to present substantial evidence that a binding contract between him

and FedEx Ground even exists, which is an essential element of his breach-of-contract claim.

*See Avis Rent a Car*, 876 So. 2d at 1118.  "Whether a contract exists must be determined under

general state-law contract principles."  *Ex parte Rush*, 730 So. 2d 1175, 1177 (Ala. 1999).  "The

requisite elements of a valid contract include: an offer and an acceptance, consideration, and

mutual assent to terms essential to the formation of a contract."  *Avis Rent a Car*, 876 So. 2d at

1118 (internal marks omitted).  To survive summary judgment on a breach-of-contract claim, a

plaintiff must provide substantial evidence as to the existence of each of the elements; merely

pleading the elements is insufficient to avoid summary judgment.  *See Dalmau v. Vicao Aerea*

*Rio-Grandense, S.A.*, 337 F. Supp. 2d 1299, 1304 (M.D. Ala. 2004) (to avoid summary

judgment, the nonmoving party may not merely rest on the allegations in his pleadings and,

instead, must come forward with evidence in support of each element of his claim, such that a

reasonable jury could find in his favor); *see also Ex parte Quinlan*, __ So. 2d __, 2005 Ala.

LEXIS 75, at *3 (Ala. May 27, 2005).

In this case, Plaintiff's Complaint alleges that he "entered into a contract with FedEx" (Am. Compl. ¶ 29), but this assertion is wholly unsupported by the evidence and Plaintiff's breach-of-contract claim must be denied as a matter of law.

1.    *No contract exists between Plaintiff and FedEx Ground because there was no offer and acceptance.*

"There is no breach of contract unless there was previously an offer and acceptance." *Frank Crain Auctioneers, Inc. v. Delchamps*, 797 So. 2d 470, 472 (Ala. Civ. App. 2000) (quoting *Sly v. First Nat'l Bank of Scottsboro*, 387 So. 2d 198, 200 (Ala. 1980)). In Alabama, as at common law, "the offerer has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance," and "the acceptance, to conclude the agreement, must in every respect meet and correspond with the offer, neither falling short or going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand." *Frank Crain Auctioneers*, 797 So. 2d at 472–73 (internal citations omitted); *see also Hall v. Integon Life Ins. Co.*, 454 So. 2d 1338, 1342 (Ala. 1984); 17 Am. Jur. 2d *Contracts* § 43 (1964); Restatement (Second) of Contracts § 69 (1981) (all cited in *Frank Crain Auctioneers*, 797 So. 2d at 473).

In the present case, there is no question that the Operating Agreement is the sole and exclusive means for any "offer" and "acceptance" of an independent-contractor relationship with FedEx Ground. (Ex. 1—Edmonds Aff. ¶ 15.) In other words, the undisputed evidence establishes that the sole and exclusive means of offering a delivery route to a prospective contractor consists of FedEx Ground presenting a prospective contractor with an Operating Agreement executed by an authorized FedEx Ground representative. Similarly, undisputed evidence establishes that the sole and exclusive means of accepting such an offer is for the prospective contractor to execute such Operating Agreement. (Ex. 1—Edmonds Aff. ¶ 16.)

Here, it is clear that Plaintiff knew that the "signing of his contract" was an event that was supposed to take place before he could officially become an independent contractor and there is no evidence that he believed he could start servicing a route as an independent contractor without a signed contract. (*See* Am. Compl. ¶¶ 11, 15–16.)  Regardless, the undisputed evidence shows that FedEx Ground has prescribed that signing an Operating Agreement is the only mode of accepting an offer to be an independent contractor.  (*See* Ex. 1—Edmonds Aff. ¶¶ 15–16.) Thus, because the record lacks an Operating Agreement signed by FedEx Ground and Plaintiff, there has been no acceptance and there is no contract between the parties.  *Cf. Frank Crain Auctioneers*, 797 So. 2d at 472–73 (where offeree did not accept the offer in the manner required by the offer, there was no acceptance and no contract).  In the absence of a contract, Plaintiff's breach-of-contract claim fails and FedEx Ground is entitled to summary judgment.

2.      *No contract exists between Plaintiff and FedEx Ground because there was no mutual assent as to the terms of any alleged contract.*

In Alabama, agreements to agree are unenforceable.  *Clanton v. Bains Oil Co.*, 417 So. 2d 149, 151 (Ala. 1982).  Thus, "when there has been no meeting of the minds with regard to the final terms of the agreement," or "when the parties have merely agreed to later agree," there is no binding contract.  *Grayson v. Hanson*, 843 So. 2d 146, 150 (Ala. 2002).

Here, viewing the facts in the light most favorable to Plaintiff, he had, at most, an unenforceable "agreement to agree" with FedEx Ground at some point in the future about the terms and conditions of an independent-contractor relationship.  Plaintiff's sworn responses to FedEx Ground's interrogatories describe his arrangement with FedEx Ground as follows:  "It was explained that if I satisfactorily completed the training and qualified to receive a FedEx truck, I *would receive offers* for various routes throughout my area."  (Exhibit 16—Pl.'s Answers to Interrogs. ¶ 10 (emphasis added).)  Plaintiff has failed to present any evidence that he could be

permitted to service a route as an independent contractor without signing a contract. (*Cf.* Am. Compl. ¶ 11; Ex. 4—Gastineau Dep. at 42:8–23; 43:1–12.)   In light of Plaintiff's own expectation that at some point in the future he would enter into an independent-contractor relationship with FedEx Ground, and the absence of a signed contract to substantiate that relationship, the undisputed evidence establishes that FedEx Ground never assented to enter into a binding contractual relationship with Plaintiff.

Furthermore, there is no evidence that the parties agreed to terms necessary to form a contractual relationship, which further establishes that FedEx Ground did not assent to a binding agreement.   For example, Plaintiff has never identified the specific geographic scope of his alleged contract with FedEx Ground, or the manner and determination of his compensation under the contract, which certainly would be essential terms and conditions of his putative contract with FedEx Ground.   The most Plaintiff has said is that he had a "two year contract" for the "route in Elmore County." (*See* Ex. 2—Thornton Dep. at 132:12; 201:13–16.)   Plaintiff cannot claim he has an enforceable, oral contract with FedEx Ground, given the uncertain, vague, and entirely prospective terms he himself uses to characterize this so-called agreement.

Additionally, "[t]he purpose of a signature on a contract is to show mutual assent."   *Ex parte Holland Mfg. Co.*, 689 So. 2d 65, 66 (Ala. 1996).   Assent may also be manifested by ratification.   *See Ex parte Cain*, 838 So. 2d 1020, 1027 (Ala. 2002).   "Ratification" may be inferred from conduct that indicates the contract was *accepted* and *acted upon* by the party against whom enforcement of the contract is sought.   *Ex parte Rush*, 730 So. 2d 1175, 1178 (Ala. 1999) (emphasis added).

As previously mentioned, there is no evidence that the parties executed an Operating Agreement, which FedEx Ground expressly requires before the formation of an independent-

contractor relationship.  Moreover, Plaintiff has presented no evidence of "ratification"—i.e., there is no evidence that FedEx Ground accepted and acted on a putative contract with Plaintiff. For example, Kent Gastineau never said or did anything to indicate that Plaintiff was authorized to begin servicing a delivery route, and never asked Plaintiff to fulfill his alleged contractual obligations as an independent contractor.  Plaintiff has produced no evidence whatsoever to support a finding that FedEx Ground ratified a putative agreement with Plaintiff.  Therefore, the Court should grant summary judgment in FedEx Ground's favor on the breach-of-contract claim.

## II.    Plaintiff's claim for specific performance fails as a matter of law because it would be impossible for the Court to craft a remedy.

Count One of Plaintiff's Complaint asserts a separate claim for specific performance. (Am. Compl. ¶¶ 20–26.)  Because Plaintiff cannot recover for breach of contract, as discussed in Section I, *supra*, this count fails as a matter of law.  *See Rentz v. Grant*, __ So. 2d __, 2006 Ala. LEXIS 10, at *16–17 (Jan. 13, 2006) (upholding summary judgment because the alleged oral agreement was "void under the Statute of Frauds" and, thus, could not support a claim for specific performance); *Luker v. Hyde*, 69 So. 2d  421, 425 (Ala. 1953) ("If the evidence fails to prove the contract . . . specific performance should be refused.").

Moreover, there is no basis to grant relief for specific performance in any event, based on the fact that it would be impossible for the Court to craft that remedy.  Specific performance of a contract is permitted only where the terms of that contract are "sufficiently certain to make the precise act which is to be done clearly ascertainable."  Ala. Code § 8-1-41(6); *see also Stringfellow Materials, Inc. v. Lee*, 438 So. 2d 1387, 1390 (Ala. 1984) (the contract must be "just, fair, and reasonable, and reasonably certain in respect to the subject matter and terms . . . "); *Citronelle Turpentine Co. v. Buhlig*, 184 Ala. 404, 406 (Ala. 1913).  Where the terms of an alleged contract are not sufficiently certain, the alleged "obligation[] cannot be

specifically enforced." Ala. Code § 8-1-41. When the contours of an obligation are undefined, the court cannot craft an appropriate order without setting the terms for the parties, which would be inappropriate. *See* Restatement (Second) Contracts § 362 ("Specific performance . . . will not be granted unless the terms of the contract are sufficiently certain to provide a basis for an appropriate order."); *Turner v. W. Ridge Apartments, Inc.*, 893 So. 2d 332, 335 (Ala. 2004) ("A court may not make a new contract for the parties or rewrite their contract under the guise of construing it.") (internal marks and citation omitted); *Burchfield v. Aetna Life Ins. Co.*, 159 So. 2d 235, 239 (Ala. 1935) ("It is not . . . the function of th[e] court to write contracts for parties.").

Here, the putative agreement between Plaintiff and FedEx is vague, incomplete, and uncertain, which means that specific performance is not an available remedy under any circumstances. Plaintiff has failed to define any crucial and necessary terms of the alleged agreement, other than to baldly claim that he "would be given a route to service." (Am. Compl. ¶ 29.)

For instance, Plaintiff has failed to specify the consideration he was to receive for his services and how it was to be calculated, whether based on the number of packages delivered, the distance traveled to deliver such packages, the amount of time it took to deliver such packages, or some other measurement. He has also failed to identify whether his alleged agreement imposed any minimum delivery requirements or whether it imposed any delivery requirements at all. More importantly, Plaintiff has failed to define, describe or identify the location of the delivery area he allegedly contracted to service. Finally, Plaintiff has not identified any terms dictating in what circumstances, if any, the alleged contract may be terminated by either him or FedEx Ground. In short, Plaintiff has failed to identify any of the necessary terms of his alleged

independent-contractor relationship with FedEx Ground.  Plaintiff's failure to proffer any evidence of the crucial features of this alleged agreement makes it impossible to ascertain "the precise act which is to be done" and renders specific performance inappropriate as a matter of law.  Ala. Code § 8-1-41(6).

Plaintiff's claim for specific performance also fails because it would require FedEx Ground to violate its contractual obligations to other independent contractors.  *See McCary v. Treadway*, 267 So. 2d 410, 414 (Ala. 1972) (no specific performance where it is "impossible to grant under the circumstances"); *McIllwain v. Bank of Harrisburg*, 713 S.W. 2d 469, 474 (Ark. 1986) ("[S]pecific performance will not lie where performance is impossible.").  Pursuant to the Operating Agreement FedEx Ground has with its independent contractors, independent contractors have a proprietary interest in their Work Areas.  (Ex. 3—Business Guide at 21.) FedEx cannot add or reconfigure routes in a Work Area unless it is justified by package volume or customer service requirements.  (*See* Ex. 3—Business Guide at 20 & Addendum 5; *see also* Exhibit 17—"The Entrepreneurial Spirit" pamphlet at last page; Ex. 1—Edmonds Aff. at ¶ 20.) In the present case, uncontroverted evidence establishes that FedEx Ground's current package volume does not warrant creation of a new route in the Montgomery area at this time, and FedEx Ground cannot manufacture the need for such a route out of thin air.  (Ex. 4—Gastineau Dep. at 48:14–23; 49:1–4.)  Requiring FedEx Ground to give Plaintiff a Montgomery-area route would force FedEx Ground to breach its agreement with existing independent contractors in the Montgomery area.  The Court should rule that the remedy of specific performance is unavailable as a matter of law in these circumstances.

### III.   There is no actionable tort here, whether characterized as simple negligence, wantonness, promissory fraud, or misrepresentation.

Counts Three and Four of Plaintiff's Complaint appear to assert tort claims for simple negligence and wantonness.  (Am. Compl. ¶¶ 34–38, 39–44.)  In order to establish liability for negligence and wantonness, Plaintiff must show, among other things, that FedEx Ground breached a legal duty or committed a legally cognizable wrong.  *See Thompson v. Mindis Metals, Inc.*, 692 So. 2d 805, 807 (Ala. 1997); *AmSouth Bank v. Tice*, __ So. 2d __, 2005 Ala. LEXIS 108, at *17 (July 1, 2005).  Because Plaintiff has failed to identify the legal duty that FedEx Ground allegedly breached or the legal wrong it allegedly committed, his tort claims fail as a matter of law.

To the extent Plaintiff's tort claims are based on FedEx Ground's alleged breach of contract, the tort claims also fail.  Where an element of a tort claim turns on the existence of an alleged contract that violates the Statute of Frauds, the Statute of Frauds also bars the tort claim.  *Holman v. Childersburg Bancorp., Inc.*, 852 So. 2d 691, 701 (Ala. 2002).  As discussed above, the alleged contract between Plaintiff and FedEx Ground violates the Statute of Frauds, so Plaintiff's tort claims also fail.  *See supra* Section I.B.  Additionally, Plaintiff has failed to properly plead claims for negligence or wantonness in any event.  Although he alleges that FedEx Ground owed him a duty, he never alleges a breach of that duty, which demonstrates that his tort claims are fatally flawed.  (*See* Am. Compl. ¶¶ 35–36, 40–42.)  Finally, to the extent that Plaintiff's negligence and wantonness claims are construed as poorly pled fraud claims, alleging negligent and wanton misrepresentation, FedEx Ground is still entitled to summary judgment.[11]

---

[11]  The terms "innocent" and "reckless" misrepresentation are more often used when stating a claim under Ala. Code § 6-5-101 ("Misrepresentations of a material fact made . . . recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.").  Because

**A.    Because the putative misrepresentation claims are founded on promises to do things in the future, such claims fail as a matter of law.**

*1.    The putative allegations of negligent and wanton misrepresentation are properly characterized as allegations of promissory fraud.*

Where a claim of misrepresentation is based on a promise to perform in the future, the proper cause of action is promissory fraud, not negligent or wanton misrepresentation. *See Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1159–60 (Ala. 2003). Where a plaintiff asserts claims of misrepresentation based on promises for the future, courts construe the claims as alleging promissory fraud, regardless of the title used by the plaintiff. *See, e.g., id.* at 1159–60 ("Although [the plaintiff] couches its claims in terms of misrepresentation and deceit, both of those claims involve a promise to engage in, or refrain from engaging in, future conduct, and more accurately allege promissory fraud."); *Bethel v. Thorn*, 757 So. 2d 1154, 1159 (Ala. 1999) ("Because the fraud alleged [by the plaintiff] is predicated upon promises . . . we construe these Counts as intended to state claims of promissory fraud.").

Here, the statements on which Plaintiff's misrepresentation claims are based are alleged promises by FedEx Ground to do something in the future, i.e., to provide him with an independent-contractor route in the Montgomery, Alabama area. According to Plaintiff, he was told at the original independent-contractor information session "that upon completion of the training course qualified applicants *would be granted* routes in and around the Montgomery area." (Am. Compl. ¶ 6 (emphasis added).) Plaintiff was allegedly informed that if he completed training and obtained a van he "*would be given* a specific route in Elmore County." (Am. Compl. ¶ 8 (emphasis added); *see also* Ex. 16—Pl.'s Answers to Interrogs. ¶ 10 ("It was explained that if I satisfactorily completed the training and qualified to receive a FedEx truck, I

---

Plaintiff uses the terms "negligence" and "wantonness," however, FedEx Ground will refer to his putative misrepresentation claims using those terms.

*would receive offers* for various routes throughout my area.") (emphasis added).)  Once Plaintiff had completed his instruction, he was allegedly told that he was "*going to get* the route here in the Millbrook area."  (*See* Ex. 9—E-mail from Plaintiff to Omar Newman.)  After he had obtained a van, Plaintiff was allegedly told that he "*would start* his Elmore County route" in about a week.  (Am. Compl. ¶ 13 (emphasis added).)  And, when a problem with his application arose, Plaintiff was allegedly told that he "*would be given* the Elmore County route" as "soon as the paperwork problem was cleared up."  (Am. Compl. ¶ 16 (emphasis added).)  By Plaintiff's own account, FedEx Ground allegedly promised to provide him with a proprietary delivery route in the future, which means his negligence and wantonness claims must be construed as allegations of promissory fraud.

2.    *Plaintiff has failed to plead promissory fraud.*

The scienter requirement for a promissory fraud claim is significant.  A plaintiff is required to show that, at the time the promise was made, the defendant intended both:  (1) to deceive the plaintiff, and (2) not to carry out the promised act.  *See Williams v. Williams*, 786 So. 2d 477, 479 (Ala. 2000) ("[T]he only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform some act in the future is when the evidence shows that, at the time the promises of future action were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive.") (internal marks and citation omitted); *Vance v. Huff*, 568 So. 2d 745, 750 (Ala. 1990).  Pursuant to Federal Rule of Civil Procedure 9(b), the intent to deceive and the intent not to perform must be at least generally pleaded.  Fed. R. Civ. P. 9(b) ("[I]ntent . . . and other condition of mind of a person may be averred generally.").

Plaintiff's putative claim for promissory fraud fails as a matter of law because he has not pleaded, even generally, any intent on the part of FedEx Ground to deceive him. Nor has he pleaded, even generally, any intent by FedEx Ground not to fulfill its promises to Plaintiff at the time those promises were made. *Cf. Bethel*, 757 So. 2d at 1157 (Rule 9(b) is satisfied in a promissory fraud claim when a plaintiff alleges "that [the defendant] knew the promises were false at the time they were made and that [the defendant] intended and knew that the contracts would not be performed . . . ."). Plaintiff not only failed to plead the necessary element of intent, but he also failed to assert that FedEx Ground intended to deceive him in his deposition testimony and interrogatory responses, as explained in more detail below.

3.    *Plaintiff has failed to produce evidence supporting a claim of promissory fraud.*

To survive summary judgment on a claim of promissory fraud, a plaintiff must also provide substantial evidence that the defendant had the requisite intent. *See Michelin N. Am., 795 So. 2d at 679* ("[B]ecause the record contains no substantial evidence indicating that Crawford or either of the other defendants intended to deceive [the plaintiff], we conclude that the trial court properly entered the summary judgment for the defendants on [the plaintiff's] fraud claim."); *Clanton v. Bains Oil Co., Inc.*, 417 So. 2d 149, 151 (Ala. 1982) (upholding a directed verdict for the defendant based on the "total absence of any evidence of probative value tending to show [the defendant's] intent not to perform the agreement to sell as promised . . . "); *Mims, Lyemance, & Reich, Inc. v. UAB Research Found.*, 620 So. 2d 594, 601 (Ala. 1993).

Here, Plaintiff failed to plead the requisite intent, and the undisputed evidence shows that FedEx Ground had no intent to deceive Plaintiff or to fail to fulfill its promises. Stan Trott and Kent Gastineau have both testified that they never intended to deceive Plaintiff, and Plaintiff's deposition testimony and discovery responses do not indicate otherwise. (Ex. 5—Trott Dep. at

72:14–20; Ex. 4—Gastineau Dep. at 79:13–17.)   Gastineau has also testified that he fully intended for Plaintiff to receive the Elmore County route when he told Plaintiff that he would get it.[12]   (Ex. 4—Gastineau Dep. at 79:18–23; 80:1–3.)   Indeed, Plaintiff himself believes that Gastineau "worked very hard . . . too [sic] always do the right thing."  (Exhibit 18—Letter from Plaintiff to Kent Gastineau at 2; Ex. 2—Thornton Dep. at 246:9; 247:1–12.)  The record contains no evidence "from which the jury could infer that, at the time the alleged misrepresentation was made," FedEx Ground intended both to deceive Plaintiff and not to give him a Montgomery-area route.  *See Nat'l Sec. Ins. Co.* 664 So. 2d at 876–77.  Because Plaintiff has not pled the requisite intent or presented substantial evidence that FedEx Ground had such intent, his putative claim for promissory fraud fails as a matter of law and FedEx Ground is entitled to summary judgment.

**B.    Plaintiff's wanton misrepresentation claim fails as a matter of law because FedEx Ground did not act recklessly.**

If the Court were to decide that the misrepresentations alleged by Plaintiff are not characterized as promises and should be treated as claims of negligent and wanton misrepresentation, FedEx Ground would still remain entitled to summary judgment on Plaintiff's wanton misrepresentation claim.   The essential elements of a misrepresentation claim are:  (1) misrepresentation, (2) of a material fact, (3) that was reasonably relied on by the plaintiff, and (4) that caused damage as a proximate consequence.  *See Baker v. Metro. Life Ins. Co.*, 907 So. 2d 419, 420–21 (Ala. 2005).   To survive summary judgment on his claim of wanton or reckless misrepresentation, Plaintiff must provide sufficient evidence from which a jury could infer that FedEx Ground's representations were made "in conscious disregard of the circumstances and with knowledge that [Plaintiff] would likely or probably be damaged."  *Roberson v. Gulf Life*

---

[12] Note that "recklessness alone is not enough to support a fraud claim of this sort."  *Nat'l Sec. Ins. Co.*, 664 So. 2d at 877.   Thus, even if Gastineau's statements could be considered reckless, Thornton's promissory fraud claim still fails as a matter of law.

*Ins. Co.*, 655 So. 2d 953, 959 (Ala. 1995); *see also Johnson v. State Farm Ins. Co.*, 587 So. 2d 974, 975 (Ala. 1991) (statements made "recklessly without knowledge"). Plaintiff's claim for reckless misrepresentation fails as a matter of law because Plaintiff has produced no substantial evidence that FedEx Ground acted recklessly in this case.[13]

There is no evidence that FedEx Ground made any statements to Plaintiff in conscious disregard of the truth or "with a reckless or conscious disregard of [Plaintiff's] rights or safety . . . ." *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp. 2d 1156, 1168 (M.D. Ala. 1999). Instead, the undisputed evidence is that the alleged misrepresentations were made in good faith and with the understanding that they were true. Trott has testified that he believed to be true everything he told Plaintiff regarding the availability of routes in the Montgomery area. (Ex. 5—Trott Dep. at 72:14–17.) Similarly, Gastineau has testified that he genuinely believed Plaintiff would be given the Elmore County route and was doing everything he could to ensure that would occur. (Ex. 4—Gastineau Dep. at 79:18–23; 80:1–11.) Furthermore, Plaintiff himself admits that he believed Gastineau had "worked very hard . . . too [sic] always do the right thing."

---

[13] To the extent Plaintiff's claims are based on alleged promises made at the original FedEx Ground information session he attended, they also fail as a matter of law because any reliance on those promises was unreasonable. *See Baker*, 907 So. 2d at 421. Plaintiff alleges that he was told at the information session that applicants who qualified as independent contractors "would be granted routes in and around the Montgomery area." (Am. Compl. ¶ 6.) It was unreasonable for Plaintiff to assume from this statement that he was guaranteed to get the Elmore County route he wanted. At that time, Plaintiff had not yet begun the extensive independent-contractor application process and could not know if he would qualify to become an independent contractor or be able to obtain the necessary financing for a delivery van. Furthermore, it was patently unreasonable for Plaintiff to interpret this statement as guaranteeing a Montgomery-area route to anyone and everyone at the meeting who qualified as an independent contractor. According to Plaintiff, there were "seven to ten people" in attendance at the information session (Ex. 2—Thornton Dep. at 129:5–17), but only two, possibly three, routes available in the Montgomery area. (Ex. 2—Thornton Dep. at 180:15–16; 181:1–6, 19–21; 185:12–15.) Clearly, not all ten people could get Montgomery-area routes, even if they all qualified to become independent contractors, and any reliance on the alleged promise was unreasonable. *Cf. Frank Crain Auctioneers, Inc. v. Delchamps*, 797 So. 2d 470, 473–74 (Ala. 2000) (finding the plaintiff's interpretation of an alleged misrepresentation to be unreasonable as a matter of law).

(Ex. 18—Letter from Plaintiff to Kent Gastineau at 2; Ex. 2—Thornton Dep. at 246:9; 247:1–12.)  Thus, even if Plaintiff's allegations of misrepresentation are not characterized as a putative promissory fraud claim, FedEx Ground is entitled to summary judgment as to Plaintiff's claim for reckless misrepresentation.

## IV.    Plaintiff is not entitled to mental-anguish damages.

Plaintiff's Complaint asks for "general and special damages" for his claims of breach of contract, negligence and wantonness.  (Am. Compl. ¶¶ 33, 38, 44.)  To the extent Plaintiff seeks mental-anguish damages for breach of contract, these must be denied as a matter of law.  "An award of damages for mental anguish generally is not allowed in breach-of-contract actions in Alabama."  *Bowers v. Wal-Mart Stores, Inc.*, 827 So. 2d 63, 68 (Ala. 2001) (*Bowers II*) (citing *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351 (11th Cir. 2000)).  This case is not within the discrete and limited exceptions to the rule against allowing mental-anguish damages in breach-of-contract actions.  *See Bowers II*, 827 So. 2d at 69 (listing exceptions).  Instead, it is a standard breach-of-contract claim for which mental-anguish damages are unavailable.  *See, e.g.*, *id.* at 70 (breach of warranty to perform proper maintenance on a car); *Wellcraft Marine, Div. of Genmar Indus., Inc. v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990) (breach of contract to sell boat); *Ruiz de Molina*, 207 F.3d at 1359–60 (breach of insurance contract, applying Alabama law).  Therefore, Plaintiff cannot recover mental-anguish damages on his breach-of-contract claim as a matter of law.

Similarly, Plaintiff may not recover mental-anguish damages for his tort claims.  "Under Alabama law . . . damages for mental anguish are not recoverable in tort where the tort results in mere injury to property unless the damage to property is committed under circumstances of insult

or contumely."[14]  *Wal-Mart Stores, Inc. v. Bowers*, 752 So. 2d 1201, 1204 (Ala. 2000) (*Bowers I*).  Here, Plaintiff has not alleged any physical injury as a result of FedEx Ground's alleged negligence, which means he has merely alleged property damages.  And, Plaintiff cannot show that FedEx Ground acted under circumstances of "insult or contumely."  Rather, everyone with whom Plaintiff dealt at FedEx Ground attempted to help him.  When Kent Gastineau and Jeff White realized that Plaintiff had a van but no route, they did "everything in [their] power" to try to get the Elmore County route approved.  (Ex. 4—Gastineau Dep. at 47:5–9; 48:10–16.)  When that could not be done, Gastineau offered to make Plaintiff's first van payment.  (Ex. 4—Gastineau Dep. at 51:12–19; 52:3–7.)  FedEx Ground representatives tried to find an alternate route that Plaintiff might be able to take.  (Ex. 10—Phone Call Tr. at 4:13–20; Ex. 2—Thornton Dep. at 151:20–23; 152:9–14.)  And Richard Jean, the Senior Manager in Pittsburgh to whom Plaintiff spoke, acted on Plaintiff's behalf and helped him sell his delivery van to another Home Delivery contractor before the first monthly payment was due.  (*See* Ex. 10—Phone Call Tr. at 81:17–23; 82:1; Ex. 2—Thornton Dep. at 242:17–23; 243:1–5; 411:21–23; 412:1–13.)

Moreover, "the 'insult-or-contumely' exception does not . . . apply in cases of mere negligence. . . . Instead, in negligence actions, the applicable test is the zone-of-danger test." *Bowers I*, 752 So. 2d at 1204; *see also Ex parte Grand Manor, Inc.*, 778 So. 2d 173, 180 (Ala. 2000) ("Alabama law does not permit recovery of mental-anguish damages based on a claim of simple negligence where the negligent act or omission results in mere injury to property."). Under the "zone-of-danger" test, a plaintiff can recover damages for mental anguish only if he or she was placed in an immediate risk of physical injury by the defendant's negligent conduct. *Bowers I*, 752 So. 2d at 1203.  Because there is no evidence that Plaintiff was ever within a

---

[14] "Contumely" is defined as "rudeness compounded of haughtiness and contempt; scornful insolence; despiteful treatment; disdain; contemptuousness in act or speech; disgrace." Black's Law Dictionary 330 (6th ed. 1990).

"zone of danger"—or in immediate risk of physical injury by FedEx Ground's conduct—he cannot recover mental-anguish damages on his negligence count. *See id.* at 1204.

Lastly, in misrepresentation cases, mental-anguish damages are available only where the misrepresentation was willful. *Pac. Mut. Life Ins. Co v. Haslip*, 553 So. 2d 537, 540 (Ala. 1989) ("[D]amages for mental distress may not be awarded unless the fraud was willful."); *Holcombe v. Whitaker*, 318 So. 2d 289, 293 (Ala. 1975). Plaintiff's putative fraud claims allege, at most, negligent and wanton misrepresentation, as set forth in Section III.C, *supra*. Plaintiff has not provided substantial evidence that would support a finding of willful fraud by FedEx Ground. Accordingly, Plaintiff is precluded, as a matter of law, from recovering mental-anguish damages under his putative misrepresentation claims. *See Pac. Mut. Life Ins.*, 553 So. 2d at 540; *Holcombe*, 318 So. 2d at 293.

## V.    Plaintiff is not entitled to punitive damages.

In his Complaint, Plaintiff seeks punitive damages for both FedEx Ground's alleged negligence (or innocent misrepresentations) and wanton acts (or reckless misrepresentations). (Am. Compl. ¶¶ 37, 43.) For the reasons explained in Section III, *supra*, FedEx Ground is entitled to summary judgment on these claims. Regardless, FedEx Ground is also entitled to summary judgment on Plaintiff's request for punitive damages.

Punitive damages are not available for simple negligence or innocent misrepresentation. *See CP & B Enters., Inc. v. Mellert*, 762 So. 2d 356, 362 (Ala. 2000) (simple negligence will "not warrant an award of punitive damages"); *Winn-Dixie Montgomery, Inc. v. Henderson*, 353 So. 2d 1380, 1383 (Ala. 1977) ("[A]n innocent misrepresentation will not support an award of punitive damages."); *see also Hillcrest Ctr., Inc. v. Rone*, 711 So. 2d 901, 904 (Ala. 1997) (trial court properly instructed the jury where it told them that a claim of innocent misrepresentation

"would entitle the plaintiffs to recover compensatory damages only"). Thus, Plaintiff's claim for punitive damages arising from his negligence or innocent misrepresentation count fails as a matter of law.

Plaintiff's claim for punitive damages arising from his wantonness (i.e., reckless misrepresentation) count also fails as a matter of law. "In Alabama, punitive damages are available in a fraud action only where the plaintiff proves by *clear and convincing* evidence that the wrongdoer's conduct is malicious, oppressive, or gross, and that the misrepresentation that is the basis of the fraud is made with the knowledge of falsity and with the purpose of injuring the party." *Cavalier Mfg., Inc. v. Jackson*, 823 So. 2d 1237 (Ala. 2001) (emphasis added); *see* Ala. Code § 6-11-20(a). In this case, the undisputed evidence shows that FedEx Ground's alleged misrepresentations were made neither with knowledge of their falsity nor with the intent to injure Plaintiff. Gastineau and Trott have both testified that they believed everything they said to Plaintiff to be true at the time they said it. (Ex. 5—Trott Dep. at 72:14–17; Ex. 4—Gastineau Dep. at 80:19–23.) They also have both testified that they never intended to injure Plaintiff. (Ex. 5—Trott Dep. at 72:18–20; Ex. 4—Gastineau Dep. at 81:1–5.) Plaintiff has not produced evidence to dispute this testimony. If anything, Plaintiff's statement that he believed Gastineau did everything he could to help him resolve the situation corroborates the testimony of Gastineau and Trott. Thus, no reasonable jury could conclude that FedEx Ground's statements were made with the knowledge that they were false and with the purpose of injuring Plaintiff, and punitive damages are unavailable.

## CONCLUSION

For the foregoing reasons, FedEx Ground respectfully submits that it is entitled to judgment as a matter of law with regard to each of the claims asserted in Plaintiff's Complaint.

Therefore, FedEx Ground hereby asks this Court to grant its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.


DATED: April 18, 2006


/s Robert K. Spotswood

Robert K. Spotswood (SPO 001)

**SPOTSWOOD LLC**
KENNETH D. SANSOM (SAN 047)
JOHN R. PARKER, JR. (PAR 123)
EMILY J. TIDMORE (VAN 041)

940 Concord Center
2100 Third Avenue North
Birmingham, AL 35203
Phone:  205-986-3620
Fax:  205-986-3639
E-mail: rks@spotswoodllc.com

*Attorneys for FedEx Ground Package System, Inc.*

## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

_____

CHARLIE THORNTON,                    )
                                     )
                                     )
                                     )
                    Plaintiff,       )
                                     )
       v.                            )          Civil Action No.
                                     )          2:05-cv-00656-MEF
FEDEX GROUND PACKAGE SYSTEM, INC.    )
                                     )
                                     )
                    Defendant.       )
_____)


## CERTIFICATE OF SERVICE


I hereby certify that on April 18, 2006, I electronically filed the foregoing

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY

FEDEX GROUND PACKAGE SYSTEM, INC., with the Clerk of Court using the CM/ECF

system, which will send notification of such filing to the following counsel of record for the

Plaintiff:

       K. Anderson Nelms, Esq.
       Jay Lewis, Esq.
       The Law Offices of Jay Lewis, LLC
       P.O. Box 5059
       Montgomery, AL 36103

DATED: April 18, 2006

/s Robert K. Spotswood
Robert K. Spotswood (SPO 001)

SPOTSWOOD LLC
940 Concord Center
2100 Third Avenue North
Birmingham, AL  35203
Phone: 205-986-3620
Fax: 205-986-3639
E-mail: rks@spotswoodllc.com

*Attorney for FedEx Ground Package System, Inc.*