## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **CHARLIE THORNTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:05cv00656** |
| | ) | |
| **FEDEX GROUND PACKAGE** | ) | |
| **SYSTEM, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## RESPONSE TO MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff Charlie Thornton responding to the Defendant's Motion for Summary Judgment stating as follows:

### Statement of the Case

In his Amended Complaint, Plaintiff claims Defendant FedEx Ground Package System, Inc. (hereinafter "FedEx") recruited Plaintiff for the purpose of having Plaintiff become an independent contractor of delivery services. Plaintiff alleges FedEx demanded certain specific requirements and obligations of Plaintiff. In consideration for performing and abiding by FedEx's specific requirements and obligations, Plaintiff was promised an independent contractor's route as consideration. Upon performance by Plaintiff of all the specific requirements and obligations, Plaintiff stood ready, willing and able to accept assignment as an independent contractor. However, due to FedEx's negligence, inadvertence and/or mistake Plaintiff was not given the promised independent contractor's route. ("Amended Complaint", Court Doc. #3).

### Procedural History of the Case

Plaintiff files this suit claiming specific performance, breach of contract, negligence and

gross negligence, wantonness and willfulness. ("Amended Complaint", Court Doc. #3). Defendant answered the Amended Complaint with a general denial and defenses. ("Answer", Court Doc.#25). Discovery was exchanged between the parties including several oral depositions. Defendant seeks entry of summary judgment as to all pending claims as set-out in Plaintiff Amended Complaint. ("Motion for Summary Judgment", Court Doc. #26).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

On or about January 2005, Plaintiff observed an advertisement in the Montgomery Advertiser newspaper for independent drivers needed. (Exhibit #1 - Thornton Depo. 126:5-15, 130:16-23). These drivers were invited to join FedEx Ground Package Systems, Inc. The advertisement indicated that potential drivers were to meet qualifications including the ability to purchase a delivery vehicle. The readers of the advertisement and interested parties were invited to attend an informational session at the Holiday Inn, 1185 Eastern Boulevard, Montgomery, on Tuesday, January 4, 2005, at 6:00 P.M. (Exhibit #1 - Thornton Depo. 126:5-8).

Plaintiff attended the informational session that was presented by Mr. Stan Trott of FedEx. (Exhibit #1 - Thornton Depo. 180:2-12, 367:7-13)(Exhibit #2 - Trott Depo. 25:2-17, 26:2-13). Mr. Trott informed interested persons that FedEx Ground Package System, Inc., a division of the package delivery business Federal Express, had open routes available in the Montgomery area for qualified independent contractors. (Exhibit #1 - Thornton Depo. 180:8-21). Plaintiff was informed that persons interested in obtaining the open routes would have to perform and abide by FedEx's specific requirements. (Exhibit #1 - Thornton Depo. 185:5-15). Included among the specific requirements would be the ability to purchase a delivery truck. (Exhibit #2 - Trott Depo. ). Further potential contractors would have to take a training course offered by FedEx. (Exhibit #2 - Trott Depo. 43:12-

2

16, 45:19-23, 46:1-14).  Potential contractors would have to pass a battery of tests including a complete application, background check, Department of Transportation physical and would have to meet certain physical ability requirements.  (Exhibit #1 - Thornton Depo. 200:8-9, 387:12-23).

At all times, it was understood that upon completion of the training course qualified applicants would be granted routes in and around the Montgomery area.  In fact, Plaintiff was specifically told that several routes were presently available in the Montgomery area. (Exhibit #1 - Thornton  Depo.  9:19,  10:1-2,  128:16-23,  129:1-4,  140:16-23,141:1-12,  180:2-23,  181:1-23). Plaintiff made application to become an independent contractor as instructed.  Plaintiff met all of the qualifications enumerated by FedEx, (Exhibit #2 - Trott Depo. 32:1-10, 75:23, 76:1-23), including passing a drug test and an examination of his driving history.  (Exhibit #2 - Trott Depo. 31:4-7) (Exhibit #3 - Gastineau Depo. 25:8)(Exhibit #1 - Thornton Depo. 377:4-14, 378:9-11).  Plaintiff passed a driver's physical examination and drug screening test.  (Exhibit #2 - Trott Depo. 32:13-19). Thereafter, Plaintiff attended a two- week training program in Birmingham, Alabama.  The training program began on January 24, 2005.  (Exhibit #1 - Thornton Depo. 143:7-16).   During his training in Birmingham, Plaintiff was informed on several occasions that upon completion of the training program and upon procurement of a custom-made delivery truck, Plaintiff would be given a route.  (Exhibit #1 - Thornton Depo. 182:6-15, 185:5-16).   After the training session, Plaintiff was approved to continue his training in Montgomery, Alabama.  (Exhibit #3 - Gastineau Depo. 16:2-4, 16:8-12). Plaintiff began training at the Montgomery facility the first of February 2005.  (Exhibit #1 - Thornton Depo. 277:3, 267:4-23).   Plaintiff trained in Montgomery from February 8th through February 24th.   (Exhibit #1 - Thornton Depo. 207:1-13, 208:1-23, 209:10-17). During his training, Plaintiff was given official FedEx uniforms.  (Exhibit #1 - Thornton Depo. 123.8-9, 197:13-20,

276:12-13). Plaintiff was also given various materials related to his position as an independent driver. Such materials included delivery paperwork, independent contractor's identification badge, instruction book, Contractor's Business Guide, truck maintenance guides and instructions, and other items. (Exhibit #1 - Thornton Depo. 262:10-16). Further, Plaintiff was instructed to purchase a particular "Emergency Services" map book of Elmore County, Alabama. (Exhibit #1 - Thornton Depo. 218:1-3, 261:20-23, 262:1-8, 297:16-23). At the instruction of FedEx, Plaintiff made application for the lease/purchase of the delivery truck he would use on his route. (Exhibit #1 - Thornton Depo. 284:12-16). FedEx requires independent contractors to operate trucks custom built to FedEx specifications. (Exhibit #2 - Trott Depo. 61:21-22, 62:16-23). Independent contractors are solely responsible for the financing and/or purchase of the delivery truck. (Exhibit #2 - Trott Depo. 34:9-11). Plaintiff's delivery truck cost some $35,148.88. (Exhibit #1 - Thornton Depo. 332:10). These trucks are purchased directly from FedEx. (Exhibit #1 - Thornton Depo. 398:18-19, 400:12-23). Plaintiff was approved for financing of the truck by Sterns Bank. (Exhibit #1 - Thornton Depo. 228:16-17). While maneuvering through the approval process for the lease/purchase of the truck, Plaintiff was repeatedly told by FedEx that he was approved and that a route was available. (Exhibit #1 - Thornton Depo. 200:3-9, 216:10-23, 217:18-23, 218:1-3, 219:2-20 226:5-23, 224:3-23). On April 19, 2005, Plaintiff met with Kent Gastineau, local terminal manager for FedEx Montgomery. (Exhibit #1 - Thornton Depo. 220:7-19). The purpose of the meeting was to sign documents related to the Elmore County route. (Exhibit #1 - Thornton Depo. 222:13-23, 223:2-13). During that meeting, Plaintiff was encouraged to continue working toward preparing for the time when he would work the Elmore County route. (Exhibit #1 - Thornton Depo. 224:7-17). On or about May 3, 2005, the delivery truck arrived. (Exhibit #1 - Thornton Depo. 226:14-23). Plaintiff was

4

informed that he would start his Elmore County route on May 10, 2005. (Exhibit #1 - Thornton Depo. 311:15-22). Plaintiff, in preparation for his new route, even purchased a radio and had it installed in the delivery truck. (Exhibit #1 - Thornton Depo. 303:19-23, 304:1). Later in May, Plaintiff was informed by Kent Gastineau that there were further problems with Plaintiff's paperwork related to the Elmore County route. (Exhibit #1 - Thornton Depo. 307:10-18, 308:11-23, 309:1-10)(Exhibit #3 - Gastineau Depo. 42:8-12). Plaintiff was led to believe weeks might pass before the Elmore County route became available. (Exhibit #1 - Thornton Depo. 311:1-23). Later, on May 16, 2005, Plaintiff was informed by Gastineau that the route was never approved. (Exhibit #1 - Thornton Depo. 319:9-21). Plaintiff was informed that no local routes existed. (Exhibit #1 - Thornton Depo. 320:12-16). Out of frustration, Plaintiff began telephoning various persons of interest employed by FedEx. (Exhibit #1 - Thornton Depo. 296:3-14). Plaintiff sought an explanation for not getting a route. Plaintiff became suspicious that he was getting the "run-around" so he began to tape record these various telephone conversations. (Exhibit #1 - Thornton Depo.100:11-23, 101:1, 328:11-19). Eventually, Plaintiff was left with a FedEx delivery truck and payments. Gastineau offered to assist Plaintiff with a payment, however, Plaintiff was not given any prospect for a future route. (Exhibit #1 - Thornton Depo. 182:,246:9-23). Plaintiff was forced to sell the truck. (Exhibit #1 - Thornton Depo. 411:21-23, 412:1-21).

## LEGAL ARGUMENT

## A. SUMMARY JUDGMENT STANDARD

Under the provisions of Fed. R. Civ. P., 56 ( c), summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex v. Cattrett*, 477 U.S. 317 (1986). The movant "always bears the initial

responsibility of informing the district court of the basis for its motion"... and ... must "demonstrate the absence of a genuine issue of material fact." *Id*.

After the movant has met its burden under Rule 56( c ), the non-movant must set forth "specific facts showing that there is a genuine issue for trial" *Id*. In ruling, the Court "must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); cited in *Reeves v. Thigpen*, 879 F.Supp 1153, 1166 (M.D.Ala. 1995).

In entertaining a motion for summary judgment, the court should review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but the court may not make credibility judgments or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence supporting the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses. 9A *C. Wright & A. Miller, Federal Practice and Procedure* § 2529, pp. 299-300 (2d Ed. 1995); *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097 (2000).

## B. BREACH OF CONTRACT

### I. Generally

It is undisputed that the parties entered into a relationship. At issue is the nature of the relationship. FedEx argues that regardless of the nature of the relationship there was never a "valid contract binding the parties". (Motion for Summary Judgment, Ct. Doc. # 28, p. 10). FedEx is

6

assumably referring to the fact that a contractors agreement was not signed. In fact, no such agreement was signed because no such agreement was presented to Plaintiff for execution. Plaintiff argues that the nature of the relationship was preexisting and outside the contractor's agreement. For Plaintiff obtaining the contractor's agreement was the reason or material cause for entering into a relationship with FedEx.

FedEx quotes *Avis Rent a Car Sys. v. Heilman*, 876 So.2d 1111, 1118 (Ala.2002). *Avis* defines the term "valid contract binding the parties" as "offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." at 1118, citing, *Ex parte Grant,* 711 So.2d 464, 465 (Ala.1997). FedEx implies that such contracts must be in writing. FedEx then concludes that the relationship between the parties is void under the Statute of Frauds because FedEx never entered into a "binding agreement with Plaintiff". (Motion for Summary Judgment, Ct. Doc. # 28, p. 11). Again, FedEx leaves us to assume that such a binding agreement must be in writing. However, such is not the standard generally applied in Alabama common law.

Alabama law recognizes estoppel, detrimental reliance, quasi-contracts and restitution of implied contracts. Each of these doctrines is interposed in light of the Statute of Frauds for the express purpose of preventing injustice and promote equity. Each of these doctrines is applicable *sub judice*.

### The Agreement

In the present case, FedEx promised Plaintiff that if he qualified, completed the training and purchased a truck, then he would have a route wherein he could profit from the income. As seen above, Plaintiff complied in every respect with FedEx's promise. He attended the training, past the tests, submitted himself to the examinations of his finances and his person. Continuing to rely upon

the promise, Plaintiff made purchases in anticipation of the route and the subsequent income. Most importantly, Plaintiff made a detour in his life. He dedicated these five months to the prospect that, if he did as instructed, FedEx's promise of a route and the subsequent income would be fulfilled.

This given, the criteria for the creation of a binding agreement as defined in *Avis* are present. The <u>offer</u> was the promise of a  route if Plaintiff performed certain acts and qualified under Defendant's specific criteria. The <u>acceptance</u> was the performance of Plaintiff. *Inter alia*, he took the training as instructed. He submitting himself to examinations of his physical person, credit, criminal history and abilities. He purchased a truck and other items. The <u>consideration</u> on the part of FedEx was the promise of a route with accompanying income; the consideration provided by Plaintiff was the availability he provided, as well as, the detriment he suffered in conforming his conduct and his life to the needs of FedEx. Plaintiff performed by giving consideration, FedEx did not.

FedEx cannot be heard to argue that there is a lack of mutuality therefore the agreement is non-binding. Although a lack of mutuality amounting to a lack of consideration invalids a contract. *Marcrum v. Embry*, 282 So.2d 49, 52 (Ala. 1973). A mere lack of mutuality in and of itself does not render a contract invalid. *Id.* Neither is the case here, both parties benefitted from their respective consideration. FedEx sought contract drivers to fulfill it market needs and FedEx sold Plaintiff a truck. (One can assume that in a commercial transaction such as the sale of a truck a profit was made.) Plaintiff sought the consideration of a route with its subsequent income.

Though consideration is essential to the validity of a contract, it is not essential that such consideration consist of a mutual promise. *Id.* Regardless of the terms, each party received consideration. Further it is not a requirement that the consideration be equal or of *par* value. *Id*, at

8

53. Each party's binding duty of performance amounts to a valuable consideration the courts do not insist that the bargain be precisely as favorable to one side as to the other. *Id*. at 53, citing, *Lindner v. Mid-Continent Petroleum Corp., supra*, 252 S.W.2d 632.

The contract that Plaintiff claims to have been breached is the contract made between the parties involving the promise of a route upon the performance and completion of the specified criteria and tasks. FedEx argues that this agreement is volative of the Statute of Frauds, Ala. Code §8-9-2(1). A contract is void unless it is written and signed. However, FedEx is referring to the independent contractor's agreement which is not the contract between the parties. The independent contractor's agreement is the consideration. It is the motive, the impelling influence and the cause for Plaintiff's actions.

FedEx does not make an argument that Plaintiff did not properly, adequately and completely perform. In fact, the FedEx Manager for Montgomery Gastineau admits that Plaintiff did everything that was asked of him. (Exhibit #3 - Gastineau Depo. 25:15-23, 26:1-19). Acknowledging this fact, Gastineau made numerous attempts to obtain a route for Plaintiff. (Exhibit #3 - Gastineau Depo. 48:11-18).

From Plaintiff's actions it can be reasoned that the contract was executed. Plaintiff fulfilled his obligations. There was an offer. There was acceptance. All that was lacking was the consideration which FedEx denied thus giving rise to the breach.

Ultimately, FedEx admits it failure to provide Plaintiff with a route was simply made a mistake.

**Gastineau:**   The system locked me out.
That's why I could not print another contract because
the contract was already signed for that work area.

9

**Spotswood:**   Okay.  So, is it fair to say that the mistake was yours, that–

**Gastineau:**   Yes.

**Spotswood:**   --that you made that mistake?

**Gastineau:**   Yes.

**Spotswood:**   Did you intend to make that mistake?

**Gastineau:**   No, I did not.

(Exhibit 3 - Gastineau Depo. 72:9-20).


**Estoppel**

The purpose of equitable estoppel and promissory estoppel is to promote equity and justice by preventing a party from asserting rights under a general technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience. *First National Bank of Opp v. Boles*, 165 So. 586, 592 (Ala.1936).  FedEx induced Plaintiff into action.  FedEx told Plaintiff that if he performed certain tasks, made certain purchases and qualified by its criteria, he would be given a route.   Both promissory and equitable estoppel require that the promise or representation of the party estopped be made with the intention, or at least the reasonable expectation, that it will be acted on by the other party. *Mazer v. Jackson Ins. Agency,* 340 So.2d 770, 774 (Ala. 1976).  When promises have been relied on by persons to whom they were directed and whose conduct they were intended to and did influence, the doctrine of estoppel applies.  *Bush v. Bush*, 177 So.2d 568, 570 (Ala. 1965).  'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and

which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' *Id*., at 569, quoting, *Restatement of the Law of Contracts*, §90, page 110. Estoppel is far reaching in its effect, extending to real as well as personal estate, and embracing almost every enterprise in which men may be engaged. *Mazer*, at 772, citing 21 C.J.S §120, pp. 1117-18. In the present case, it is unjust that Plaintiff would take all of the aforementioned actions in reliance upon Defendant's promise only to be precluded because the agreement was not reduced to writing.

Further, the Statute of Frauds requirement that certain contracts be in writing applies to executory contracts not executed contracts. *Scott v. Southern Coach & Body Co.*, 197 So.2d 775, 777 (Ala. 1967). Plaintiff performed as required until the consideration was denied.

**Detrimental Reliance**

An element of estoppel is detrimental reliance. *Ex Parte Ballew*, 771 So.2d 1040, 1042 (Ala. 2000), citing, *Layman's Sec. Co. v. Waterworks and Sewer Bd. City of Pritchard*, 547 So.2d 533. (Ala. 1989). A plaintiff invoking *estoppel* must demonstrate that he materially and detrimentally relied upon the promise of the defendant. *Ex Parte Ballew*, at 1042. Here Plaintiff dedicated some five months of his life to the promise of FedEx. Further, he made purchases, took training and presented himself for examination. Spending substantial sums based upon promises is evidence of detrimental reliance thus invoking estoppel. *Ballew v. Town of Priceville*, 771 So.2d 1037, 1039 (Ala.Civ.App. 1999), citing, *Layman*, at 535-36. Plaintiff expended funds for insurance, tag and title for the truck. (Exhibit #1 - Thorton Depo. 353:3-4). And, he invested in a down payment for the truck. (Exhibit #1 - Thorton Depo. 353:3-4).

**Quasi-contract**

Under the doctrine of quasi-contract, the law implies a contract. Jordan v. Mitchell, 705 So.2d 453, 457 (Ala.Civ.App. 1997). This doctrine is based upon principles of equity, to prevent unjust enrichment of one who knowingly accepts and retains a benefit provided at detriment of another, who has a reasonable expectation of compensation. *American Family Care, Inc. v. Fox*, 642 So.2d 486, 487(Ala.Civ.App. 1994).

The benefit conferred upon FedEx was the availability of a qualified independent contractor. FedEx was suffering growth problems. (Exhibit #2 – Trott Depo. 20:4)(Exhibit #3 - Gastineau Depo. 32:2-6). Its Montgomery branch had suffered from some turn-overs in independent contractors. (Exhibit #2 - Trott Depo. 18:14-23, 19:1-21, 20:3-21) (Exhibit #3 - Gastineau Depo. 33:19-21). As enumerated above, Plaintiff made himself available to fulfill FedEx's needs in Montgomery.


**Performance Within One Year**

Alabama's Statute of Frauds voids an oral agreement, "which by its terms, is not to be performed within one year from the making thereof." Ala. Code §8-9-2(1). It is agreed that the agreement between the parties was in essence oral. FedEx promised Plaintiff that if he performed and qualified he would be given a route from which he could make an income. This agreement was not reduced to writing. FedEx argues that the contractor's agreement is the determinant for application of the statute of frauds. FedEx argues that because the parties never executed the contractor's agreement and because the contractor's agreement is for a duration of two years the Statute of Frauds must apply. However, FedEx does not address the pre-existing five month old

relationship between the parties.  Further, the scope of the case law used to support its argument is not on point.  Specifically, FedEx quotes *Selby v. Quartrol*, 514 So.2d 1294, 1296 (Ala.1987).  *Selby* brings suit relevant to an oral employment contract.  It is well settled that Alabama is a "work-at-will" state.  *Bates v. Jim Walter Resources, Inc*., 418 So.2d 903, 906 (Ala. 1982).  *Selby* does not claim that he was not given a job.  He instead claims that the job was over one year in duration.  This is very distinguishable from Plaintiff's claim.  Regardless of the duration, Plaintiff claims he performed as required but was denied his due consideration.  Not withstanding, the evidence, as demonstrated herein, indicates that Plaintiff performed the required acts within some five months between January and May, 2005.

## C. NEGLIGENCE

FedEx argues that a negligence claim is not supportable at law.  In large part FedEx argues that there was no physical harm and that because the relationship between the parties sounds in contract no tort claim may apply.  In fact the existence of a contract does not preclude a claim in tort. In *Morgan v. South Central Bell Co.,* the Alabama Supreme Court opined that negligent affirmative conduct in the performance of a promise will subject a defendant to tort liability as well as contract liability.  446 So.2d 107, 114 (Ala. 1985).  Morgan was a dentist who wished to have his professional corporation advertised in the Yellow Pages.  *Id*. at 110-112.  The Yellow Pages promised to list Morgan's corporation's name but repeatedly omitted the entry.  The Court ruled that where the plaintiff was clearly dependent upon the defendant, and the defendant was aware of that dependency, and through undertaking to perform the contract, did so in such a negligent and slipshod manner that the defendant was damaged thereby, clearly there should be tort liability.  *Id.* at 114.

As demonstrated hereinabove (page 9), Gastineau admits he made a mistake.  In his deposition he admits that he committed a paperwork error.  (Exhibit - Gastineau Depo. 73:2-14). 70:7-23, 71:1-11, 72:13-23, 73:1-23).

There is, in Alabama, no tort liability for nonfeasance for failing to do what one has promised to do in the absence of a duty to act apart from the promise made. On the other hand, misfeasance, or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things. Id. Citing, *C & C Products, Inc. v. Premier Industrial Corp.,* 290 Ala. 179, 186, 275 So.2d 124 (1972); and *Garig v. East End Memorial Hospital,* 279 Ala. 118, 182 So.2d 852 (1966).

Misfeasance is defined as the improper doing of a lawful act.  *Black's Law Dictionary*, 6th Ed., p. 1000.  Gastineau admits he impropery performed a function directly relevant to Plaintiff.  An act which directly affected Plaintiff's expectation thereby causing him harm or damage.


**D.  FRAUD**

Plaintiff claims that FedEx should have told him that there was a possibility that a route would not be available.  Specifically, FedEx should have told Plaintiff that there was a possibility that he would not be a route before it sold him a delivery truck.

Plaintiff has made a *prima facia* showing that a relationship exists between the parties.  A duty to disclose arises either from a confidential relationship between the parties or from the particular facts and circumstances of the case. *Baker v. Bennett*, 603 So.2d 928 (Ala.1992), rehearing denied, certiorari denied on other grounds, 113 S.Ct. 1260.  Whether there is a duty to disclose depends upon the relations of the parties, the value of the particular fact due to be disclosed, the

relative knowledge of the parties, and other circumstances. *Deupree v. Butner*, 522 So.2d 242 (Ala.1988); *Samson Plastic Conduit & Pipe Corp. v. Battenfeld Extrusionstechnik GMBH*, 718 F.Supp. 886 (M.D. Ala.1989) *RNH, Inc. v. Beatty*, 571 So.2d 1039 (Ala.1990).

Section 6-5-102, *Code of Alabama* (1975) provides that suppression of a material fact which the party is under an obligation to communicate constitutes fraud, and that this obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

Justice Ingram, writing for the court in *Ford New Holland, Inc. v. Proctor-Russell Tractor Company*, 630 So.2d 395 (Ala. 1993), explains:

> "The type of interest protected by the law of deceit is the interest in formulating business judgments without being misled by others in short, *in not being cheated." Fowler v. Harper, et al., The Law of Torts* § 7.1, at 378 (2d ed. 1986) . Fraudulent suppression is not actionable merely because a duty to disclose existed; rather, it is actionable because "the very propositions of a party imply that certain things, *if not told,* do not exist." *Corry v. Sylvia y Cia, 192 Ala. 550, 560 (1915)* . In other words, "silence is fraudulent, because the silence amounts to an *affirmation that a state of things exists which does not,* and the party is deprived to the same extent that he would have been by positive assertion." *Id.* (Emphasis added.)

In *Bank of Red Bay v. King* the court defines a confidential relationship as one in which:

> one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.
> 482 So. 2d 274, 284 (Ala. 1985).

FedEx made a promise to Plaintiff it could not or would not fulfill.  Plaintiff, had he been

explained the prospect that a route was not or might not be available, could have made a different decision.  Further, Plaintiff was not in a position to have knowledge of the prospects for a route.  He was at all times led to believe that a prospective route existed.  Apparently, so did Gastineau and Trott.  Gastineau testified that he genuinely believed Plaintiff would be given the Elmore County route.  (Exhibit #3 - Gastineau Depo. 79:18-23).  Trott testified that he believed that he was correct in his statements regarding the availability of routes.  (Exhibit #2 - Trott Depo. 72:14-17).  FedEx never told Plaintiff that the possibility existed that he might not get a route.  Such silence is fraudulent or at the least negligent.


## CONCLUSION

There is a genuine issue of material fact as to the nature and extent of the relationship between the parties.  There are genuine issues of material fact as to whether the subject contractual agreement between the parties was lawful or valid.  There is a genuine issue of material fact related to the care or performance given by the defendant such that continued questions of negligence continue to exist.  This considered, the existence of genuine issues of material fact in this case preclude judgment as a matter of law in favor of the defendants.  Plaintiff abandons all claims for specific performance and wilfulness and wantonness.

Submitted this the _19_ day of May, 2006.

s/K. ANDERSON NELMS
K. ANDERSON NELMS
P.O. Box 5059
Montgomery, AL 36103
Phone: (334) 263-7733
Fax: (334) 832-4390
andynelms@jaylewislaw.com

16

ASB-6972-E63K
Counsel for Plaintiff

OF COUNSEL:
THE LAW OFFICES OF JAY LEWIS, L.L.C.
847 S. Lawrence Street
Montgomery, AL 36104
(334) 263-7733
(334) 832-4390

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing on the following parties and/or counsel by placing a copy of the same in the United States mail, postage prepaid and properly addressed, or by hand delivery on this_19th_ day of May, 2006.

Robert Keeling Spotswood
Kenneth Daniel Sansom
John Robert Parker, Jr.
Spotswood, LLC
2100 Third Avenue, North
Concord Center, Suite 940
Birmingham, AL 35203

s/K. ANDERSON NELMS
K. ANDERSON NELMS
P.O. Box 5059
Montgomery, AL 36103
Phone: (334) 263-7733
Fax: (334) 832-4390
andynelms@jaylewislaw.com
ASB-6972-E63K
Counsel for Plaintiff